**UNITED STATES of America, Plaintiff,**

**v.**

**ONE COLT MACHINE GUN, MODEL MG–52–2, .50 CALIBER, AIRCRAFT SERIAL NO. C–2428–HB, and 363 Rounds .50 Caliber Ammunition, Defendants.**

**No. 84–8510–Civ.**

United States District Court,
S.D. Florida, N.D.

Jan. 16, 1986.

Alan Mishael, Asst. U.S. Atty., Miami, Fla., for plaintiff.

Stephen Pave, South Miami, Fla., for defendants.

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND FINAL JUDGMENT**

GONZALEZ, District Judge.

THIS CAUSE was heard by the court at a non-jury trial held on December 19, 1985, wherein the plaintiff sought civil forfeiture of the defendants pursuant to Title 18 U.S.C., section 924 and Title 26 U.S.C., section 5872. The court has heard and considered testimony and evidence submitted on behalf of the parties. The court has also made certain determinations as to the credibility of witnesses and documentary evidence. The court now makes and enters the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1. The defendants in this action are an automatic .50 caliber machine gun, Colt model MG52-2, serial number C-2428-HB and 363 rounds of assorted .50 caliber ammunition.

2. The claimant in this action is Richard Allen Wilson. Mr. Wilson was the registered owner of the machine gun and the ammunition at the time they were seized for forfeiture on June 20, 1984. He therefore possesses standing to contest their forfeiture.

3. On June 19, 1984, at the Phil Foster Boat Ramp in Palm Beach County, Florida, the claimant and two (2) other individuals loaded the defendants into the claimant's vessel. They then proceeded "40 miles out" of port.

4. The court finds that the phrase "40 miles out" meant that the claimant was 40 miles away from port, not necessarily 40 miles east of the port.

5. The court further finds that the claimant went 40 miles north from port to approximately Vero Beach, Florida, as the claimant and his passengers were able to see the towers in Vero Beach, Florida. At times the vessel was more than three (3) miles from shore; it was never more than 12 miles east of the coastline.

6. The purpose of the claimant's trip was to verify certain Loran coordinates that he anticipated purchasing from his passenger, Nelson Wait. These coordinates, written in a ledger-type notebook, were in code because of their commercial value.

7. The claimant and his passengers also caught approximately 600 pounds of fish for future sale.

8. At approximately 1:00 a.m., on June 20, 1984, U.S. Customs Officer Ed Lamoy and two (2) Palm Beach County Sheriff's Deputies observed the claimant's vessel near the Phil Foster Boat Ramp. Officer Lamoy approached the vessel and identified himself. The claimant told the Officer that he had a semi-automatic rifle and a .50 caliber machine gun on board.

9. After the claimant informed the Officer that he had been "40 miles out", he was advised that a seizure was being made. The claimant was informed that it was a violation of United States law to bring a machine gun into the United States without permission from the Bureau of Alcohol, Tobacco and Firearms.

10. When the vessel was inventoried, the Officers found the defendants, a semi-automatic rifle, Loran coordinates written on business-type cards and a ledger-type notebook with numbers written in it.

11. U.S. Customs Officer Joseph Goulet was able to interpret and plot the coordinates found on the business cards. Of the 328 coordinates interpreted, 326 coordinates represented positions in the northwest portion of the Little Bahama Bank.

12. Officer Goulet was unable to interpret and plot the coordinates found in the ledger notebook. This inability is consistent with Mr. Wait's representations that the coordinates were coded because of their commercial value.

13. U.S. Customs Officer Richard Zobel testified in rebuttal that on November 14, 1984, the claimant told the Officer that he was a smuggler. The court finds specifically that the statement was not an admission of any wrong-doing but merely an off-the-cuff comment made to irritate the Officer.

14. The court makes no findings as to the claimant's purpose for having the defendants aboard his vessel as such a finding is not relevant to this case.

15. The court finds that the claimant has proven by a preponderance of the evidence that the defendants were not transported in interstate or foreign commerce nor were they imported or brought into the United States on June 20, 1984. Thus, the claimant did not violate any laws or regulations of the United States.

## CONCLUSIONS OF LAW

1. This court possesses jurisdiction to adjudicate this case pursuant to Title 28 U.S.C., sections 1345 and 1355.

2. The United States alleges that the defendants are subject to forfeiture pursuant to Title 18 U.S.C., section 924 and Title 26 U.S.C., section 5872. Section 924(d) provides:

> Any firearm or ammunition involved in or used or intended to be used in, any violation of the provisions of this chapter or any rule or regulation promulgated thereunder, or any violation of any other criminal law of the United States, shall be subject to seizure and forfeiture and all provisions of the Internal Revenue Code of 1954 relating to the seizure, forfeiture, and disposition of firearms, as defined in section 5845(a) of the Code, shall, so far as applicable, extend to seizures and forfeitures under the provisions of this chapter.

Section 5872(a) provides:

> Any firearm involved in any violation of the provisions of this chapter shall be subject to seizure and forfeiture, and (except as provided in subsection (b)) all the provisions of internal revenue laws relating to searches, seizures, and forfeitures of unstamped articles are extended to and made to apply to the articles taxed under this chapter, and the persons to whom this chapter applies.

3. Under Title 18, section 922, certain actions involving weapons are unlawful. Section 922(a)(4) specifically provides that it is unlawful

> for any person, other than a licensed importer, licensed manufacturer, licensed dealer, or licensed collector, to transport in interstate or foreign commerce any destructive device, machine-gun (as defined in section 5845 of the Internal Revenue Code of 1954), short-barreled shotgun, or short-barreled rifle, except as specifically authorized by the Secretary consistent with public safety and necessity;

The claimant is not a licensed importer, licensed manufacturer, licensed dealer or licensed collector of firearms.

4. The United States also alleges that the claimant violated Title 26 U.S.C., section 5844 which provides that "[n]o firearm shall be imported or brought into the United States or any territory under its control or jurisdiction unless the importer establishes ... [certain exceptions not relevant herein.]"

5. Title 18 U.S.C., section 10 provides that

> [t]he term "interstate commerce", as used in this title, includes commerce between one State, Territory, Possession, or the District of Columbia and another State, Territory, Possession, or the District of Columbia.

> The term "foreign commerce", as used in this title, includes commerce with a foreign country.

Additionally, Title 18 U.S.C., section 921(a)(2) defines the term "interstate or foreign commerce" to include

> commerce between any place in a State and any place outside of that State, or within any possession of the United States (not including the Canal Zone) or the District of Columbia, but such term does not include commerce between places within the same State but through any place outside of that State....

6. The term "import or brought into" is not defined in the Internal Revenue Code. The term "importer" is defined in Title 18 U.S.C., section 921(a)(9) to mean

> any person engaged in the business of importing or bringing firearms or ammunition into the United States for the purpose of sale or distribution.

7. The territorial waters of the United States extend three (3) miles from its shores. *United States v. Louisiana*, 363 U.S. 1, 80 S.Ct. 961, 4 L.Ed.2d 1025 (1960); *United States v. McRary*, 665 F.2d 674 (5th Cir.1982). The area between three (3) miles from shore and 12 miles from shore is known as the contiguous zone. Although this area is part of the high seas, the United States exercises control over foreign vessels within this area to enforce customs, fiscal, immigration and sanitary regulations. *United States v. McRary, id.; United States v. Warren*, 578 F.2d 1058 (5th Cir.1978).

■ 8. In this matter, the claimant has proven by a preponderance of the evidence that the defendants were not transported in interstate or foreign commerce.

In *United States v. McRary, supra* at 677–78, the court construed a definition of "interstate or foreign commerce" similar to the definition contained in title 18 U.S.C., section 921(a)(2). The court, reviewing a kidnapping conviction, determined that "transport in foreign commerce" requires "a forced departure from the United States and a subsequent involuntary entry into a foreign state." *Id.* at 677.

This court is likewise compelled to find that absent evidence that the defendants departed from the United States *and* entered into a foreign state, Title 18 U.S.C., section 922(a)(4) was not violated by the claimant. The evidence presented proved by a preponderance that the claimant was in the contiguous area; he did not, however, enter into any foreign state.

Additionally, the court finds that the claimant's activities are exempted from the definition of "interstate or foreign commerce." Title 18 U.S.C., section 921(a)(2) specifically excludes "commerce between places within the same state but through any place outside the state." On July 19, 1984, the claimant departed from Palm Beach County, Florida, traveled outside the three (3) mile limit, caught fish for future sale and returned to Palm Beach County, Florida. His activities, therefore, fall within the statutory exception to "interstate or foreign commerce."

■ 9. The evidence presented further establishes that the claimant did not violate Title 26 U.S.C., section 5844 by importing or bringing the defendants into the United States. To constitute a violation of this section, the claimant had to intend to sell or distribute the defendants within the United States. See, 18 U.S.C. § 921(a)(9). The evidence reveals that the claimant considered the defendants, especially the machine gun, as prized possessions. They were on the vessel so that the claimant could show them off to his companions.

There was no intent to sell or distribute them.

Further, the claimant had the defendants in his possession when he departed from the boat ramp; he remained within the contiguous zone for the entire journey; and he had the defendants when he returned to the boat ramp. The court finds that to import or bring something into the United States, there must be some evidence that the items came into the United States from a foreign state. The evidence presented by the claimant refutes this requirement.

10. The court concludes that although the United States has satisfied its burden of demonstrating probable cause to support forfeiture of the machine gun and ammunition, the claimant has proven by a preponderance of evidence his defenses to forfeiture.

11. The defendants, therefore, are not subject to forfeiture under Title 18 U.S.C., section 924 or Title 26 U.S.C., section 5872. Thus, the United States is not entitled to a judgment of forfeiture.

Accordingly, it is hereby

ORDERED AND ADJUDGED that Judgment be and the same is entered in favor of the claimant and against the United States.

It is further ORDERED AND ADJUDGED that the claimant is entitled to the return of his property. The United States shall return the machine gun and ammunition to the claimant within 20 days of the filing of this Order.